There are two types of claims that generally can arise in a case like this one. The first is whether a seizure of a package was unreasonable at its inception because it was not justified by reasonable suspicion. The second type of claim only arises when there has been a justified seizure in the first place. And this second claim would be about whether the length of the seizure was unreasonable notwithstanding that the initial seizure was justified by reasonable suspicion. This case is about the first type of claim, not the second. And our theory is that when Officer Todd seized Mr. Hoang's package without reasonable suspicion, and he did that when he pulled it from the normal stream of processing at the Federal Express facility in Garden Grove, California. And this seizure occurred before he had his dog sniff it. It occurred before he observed the parcels labeling. You know, you're right, but how do you get around the England case? Well, England is the principal case the government relies upon. That's the point. Yes. And the way the government reads England brings it into conflict with at least two other cases of this circuit. That's the Aldaz case and the Hernandez case. Well, I hate to interrupt you, but they say in England that Aldaz is distinguishable, and they go ahead to point out why. But they distinguish Aldaz on a basis that the Aldaz court didn't recognize, and they reduce one of the holdings of Aldaz to dicta. Because in Aldaz, the court, this court, citing Van Leeuwen, reaffirmed that a government agent may seize and obtain packages if the agent has a reasonable and articulable suspicion of criminal activity. Let me ask you another question. I read your brief very carefully, referring to page 50. And you say on that page, as was the case in Van Leeuwen and Aldaz, and here's the part that I'm interested in, it appears that the postal inspectors in England, quote, suspected that the defendant's package contained narcotics before they detained them. So I read that to mean that in England, when I look at it carefully, that we're going to find out that they suspected the packages contained narcotics before they detained them. I can't find, and then you cite England, 971 Fed Second at 420. I can't find, what, where are you quoting from on page 420? Quote, suspected that the defendant's package contained narcotics before they detained them. This is what the England decision says. It says, postal inspectors at each station suspected England's packages contained narcotics. Where does it say that? That's in the first paragraph under the heading facts. It's the last sentence in that first paragraph. Where's the quote come from on page 420? In England. From that sentence? On page 420? Yes. 420 starts, I have the Westlaw version, so I don't have the book version, but page 420 starts with the words, under the Fourth Amendment, and under that there's a heading called facts. And there's a first paragraph that begins, England deposited two packages, et cetera. The last sentence of that paragraph reads, postal inspectors at each station suspected England's packages contained narcotics. Now admittedly, England doesn't tell us whether or at what point they suspected that, or whether they suspected it just because they knew something, or because they suspected it after they had looked at the packages. But that's what the court said. What do we do with the final sentence that says, here we need not consider whether the postal inspectors had reasonable and articulable suspicion to seize the packages before they obtained the search warrants, because until the packages were searched pursuant to these warrants, no seizure occurred. They seem to be saying that if something is in the course of being transported, either by the mail, you say not so much so with respect to Federal Express, that unless there's some aspect of the case that delays it beyond the normal expectation of delivery, there just isn't a seizure. Well, if that principle, if that is the principle this court reads England for, and I'll agree that the language from England that you quoted is completely unhelpful to our case. In fact, it's fatal to our case. That's why I want to know what your response to it is. Right. The problem is that principle has no limitation that makes any sense under the Constitution. And if you read England that it brings it into conflict with Hernandez, both decisions of this court, and it brings it into conflict with the Supreme Court's decision in Van Leeuwen, where the court held that parcels are not exempt from inspection, except as allowed by the Fourth Amendment. And I thought the Fourth Amendment rule was, so long as you do not detain the parcel longer than it would ordinarily be detained in the course of transit, you're all right. That is what England says, but I don't think that that principle is consistent. That's the limiting principle in England, isn't it? Well, except examine the principle in some other context. Let's say a person ships some goods to the state of Hawaii, as happens frequently by barge or by ocean freight, and it's supposed to get here in ten days or a week or maybe two weeks. Is the principle of the Fourth Amendment really that the government can do anything to that package for those two weeks as long as they get it here on time? They take it off the ship. I don't understand the limit of your argument. I have another question about whether or not – well, first, the factual question. How do we know the package was timely delivered? Well, we don't from the record in this case. The government has said it, and in the supplemental excerpts of record, they've attached a bunch of documents, many of which aren't part of the record of this case in the court below, were never submitted to the district court. And in fact, there is no proof in the record of this case that it was delivered on time. Although the government has said it time and time again. Did you ask that that be made the subject of an evidentiary hearing, that discrete issue? We weren't allowed an evidentiary hearing on any issue. Did you ask that that be made the subject, the discrete subject of an evidentiary hearing? I believe we did because the government was asked by the district court to make a proffer about facts, and the trial lawyer in the case rejected the proffer, and then the government of the court, the district court asked for a supplemental briefing, and both sides submitted supplemental briefing. In that supplemental briefing, the government stated on several occasions that the inspector had pulled the package, that he had – let me get the exact story, occurred here, he pulled the seven packages, they didn't dispute that Todd pulled the parcels, and they stated that at the time he pulled the parcels, he had no reasonable articulable suspicion to believe that any of them were drug parcels. This seems to me to have happened reasonably quickly. I mean, they pulled the parcels, then they sniffed, then they got the warrant. So in the face of it, it would appear that there was no interruption of the normal delivery time. Well, except that if he pulled the parcels, that's not – government agents pulling parcels at the Federal Express facility are not part of the normal processing of the package. And that might be another distinction between this case and England, because in England, we're talking about the U.S. mail. You bring something to the post office, you're handing it over to government officials. Not anymore. The post office was privatized years ago. Well, privatized in the sense that it's a government wholly owned corporation. That's not exactly privatized, in my view. You know what the post office uses now to make deliveries? Federal Express. Sometimes. I have a question about where the limit of your argument goes, because the Fourth Amendment is based a lot on reasonable expectations. And frankly, I mean, we have a number of contexts where, in this day and age, where we put things into the public delivery systems, whether it be at airports or through the mail or whatever. And dog sniffs are routine, x-ray examinations are routine, searches are routine. It's all part of the routine business of making sure that it's secure so the country's secure, the delivery systems are secure. So isn't there an expectation now if you send your package through one of these public delivery systems that it could be subject to a dog sniff or an x-ray machine or something like that? If Federal Express submits it to a dog sniff or if they x-ray it, you're right. And if Inspector Todd, in this case, had walked over to the package where it was and looked at it and noticed something about the label or noticed something about the smell of it or had brought his dog over where it was, we wouldn't be here making this argument or any argument. What happened was he pulled the package. But he didn't just pull that one, right? He pulled a number of packages. He pulled seven packages. If we were to rule in your favor, why would we not be invalidating the entire Homeland Security procedure of random checks of everything that's in transit? In other words, if we rule there has to be some kind of suspicion, call it what you want, aren't we overruling the entire Homeland Security approach now to things in public transit? Not at all. All that has to be done is what is done, which is you have your luggage on the conveyor belt at the airport and they walk the dog by the conveyor belt. The dog barks or makes a motion that indicates that. That's a pretty thin read. If you take it off the conveyor belt, it's a seizure. If you leave it on the conveyor belt, it's not. Right. Or if the Federal Express guy takes it off the conveyor belt and says, you know what, this package is suspicious under our Federal Express. Isn't that sheer form over substance, though? Well, I think that the Fourth Amendment is about government intrusion. Here there's a government intrusion. There's a seizure. But as I understand what goes on with respect to the Homeland Security, when you send your stuff through the airport, they don't merely just walk the dog past. They randomly, at least as far as I can tell randomly, maybe they really like my stuff, but they open it up and then they leave me a little note that says we were here. But they do more than walk a dog past it. Yeah, there's a big note that tells you that. Without any articulable suspicion other than I've got this black bag, they open it up. Except they tell you that's going to happen. When you go bring your package to Federal Express, they don't tell you, hey, you know what, the DEA's going to be by with his dog later on. There's no warning of that. You also had an airport. This was also at an airport. It wasn't at an airport. Oh, it's at the airport. The airport was wrong about that. It was at Garden Grove, California, which the government said is not at the airport. And then Agent Todd, when he confiscated the package, took it to his office, which the record is ambiguous about. Either it is at Orange County Airport or maybe it isn't at the Orange County Airport. But the Federal Express facility is, I assume it's near the airport. The point is it was scheduled to fly on an airplane. No doubt. All right, Counselor, you've exceeded your time, and we will hear from the government side. Thank you, Your Honors. May it please the Court, my name is Beverly Lee Samashima, and I'm an Assistant U.S. Attorney for the District of Hawaii. The issue here is whether Investigator Todd and Otto's exam, which took all of five minutes, a random exam of the parcels at the FedEx facility, even rose to the level of five minutes. Now you say Otto's exam. Otto's the dog, right? Otto's the narcotics canine. And whether that even constitutes a seizure for purposes of the Fourth Amendment. And we believe that the case law is settled on this point. Both the England Court as well as the Hernandez Court talked about reasonable expectations on the part of the recipient of any package. And that expectation is solely that they're going to get timely delivery at a date and place that they expect. And that's the key here. Let me make sure I understand what happened. So the packages are in some sort of holding room at FedEx. Right. The federal official shows up with Otto the dog. Correct. Seven packages are pulled out of how many? Do we know how many? No, Your Honor, that was my boo-boo. I used the word pull, and that was the issue of what happened in the court below. And unfortunately, my poor use of the word has really been rubbed in my face, both in the briefing as well as in this argument. If you look at the Todd affidavit, it's very clear. He arrives at the Garden Grove FedEx facility at 9. He gets permission from Dave Axelrod, the customer service rep, to go into the hold room, which is defined as where packages are left for shipment wherever they're destined. He goes in at 9.05 with Otto. Five minutes later, Otto alerts. In the hold room, there are seven parcels. They're on a chair, they're on a cart, and they're on the floor. On the clear face of the affidavit, they were the parcels that were in that room, nothing else. Now, I used the words below. Somehow, Todd pulled it. But no, he went into the hold room. That's where the exam occurred. And that distinction may be Where's the affidavit in the excerpt of the record? It's in the excerpt of the record starting at 26, Your Honor. What is the hold room? The hold room is a room within the FedEx facility which is used to process packages for mailing. Let me find the exact reference where he defines what the hold room is. It's paragraph two on the excerpt of record 31. The last sentence says, The hold room is a room designed for processing of parcels at the FedEx office as the parcels come to FedEx or are sent out for delivery. So there just happened to be these seven packages? Just seven parcels there. Otto did the random search. He happened to alert on one particular parcel, indicating a positive alert. And I believe the case law settled that that, in and of itself, from a certified narcotics canine, could constitute probable cause. So within five minutes of that exam, Otto alerted. At that point, the investigator takes the parcel, takes it out to his office, which is as stated in his affidavit, at the airport, the Orange County airport. And I think counsel's correct. The FedEx facility is in Garden Grove. So he actually took it out, took it to his office, and then conducted further investigation. Now, Judge Gilmore below looked at the issue of my use of the word pulled. She thought that was a distinction. But if you look at the Johnson case and the England case, it's not the physical movement of the object. It's the extent of the interference. And in this case, there was no interference. How do we know there was no interference with the timely delivery of the package? Your Honor, I believe there is in the record in the court's order at supplemental excerpt of Record 93 where the court actually says the parcel was delivered at 3.40 the next day, November 3rd, and that the Huang signed for and accepted the parcel. And that was when it was expected? The very next day. Overnight delivery. So, and there was no dispute on that. Counsel never raised below that there was a dispute as to when delivery was made. Delivery was timely. As in the England case, it was delivered in the normal course. That was when Huang expected it. A FedEx parcel is expected the next day. He got it the next day. You know, you might not have been wrong when you inferred that they had been pulled. I'm just rereading the affidavit. On Tuesday, Dutton and I let Otto into the whole room to do random searches on approximately seven parcels. Now, that's weird. I mean, are there only seven parcels in there when he lets him in? Are they to do every parcel in the room? I mean, how does he know at the time he's letting him in to do seven parcels? The search was random and off lead. I assume random as to when one of the seven. The parcels were on the floor, on a chair, and on a cart. Otto searched and then he alerted to one. That doesn't sound as though that's sort of a normal storage thing. If they're in a whole room, you've got one on the floor, you've got one on a chair, they're on a cart. If we're at FedEx, I mean, I've never been in a whole room, but I'd be surprised if they only had seven packages. You might have been right they were pulled. Well, but, you know, unfortunately, I don't think it made a difference. And the court did note that that was a factual inconsistency. But she concluded that didn't make a difference legally. And the government would submit that it doesn't. It's embarrassing for me because the defense has certainly used that to argue why that makes a big difference. But, again, it's an artificial distinction, just like the distinction that somehow FedEx, you're entitled to a greater expectation of privacy if you use FedEx. But I think with the case in its current posture, in my view, you probably have to live with the supposition for the moment that they were pulled. Now, if they weren't, you know, I mean, if you lose at this point, you go back and find out were they or whatever. But I think that that was the basis in which Judge Gilmore decided it was that they were pulled. And she says it doesn't matter, which is correct. That's our position. Yes, Your Honor. As far as any other questions that arose, I believe that Judge Trott, you're absolutely correct. England does dispose of this case. I think the England court, although terse, as the defense characterizes it, distinguished specifically the Aldez and the Van Leeuwen case. And in those cases, we didn't have a situation where you're presented with no reasonable suspicion. In that case, it was clear the court already found that there was reasonable suspicion and then focused on whether there was an interference with the normal delivery. But I don't think that, I mean. On the delivery time, once they have probable cause, the delivery time question goes out the window. Right. I mean, they can seize it and never deliver it, as far as I'm concerned, without violating the Fourth Amendment. But if they were to take it and then sit on it for three days, for example, and then do a dog sniff, I think that's what they're talking about about the delivery time. Exactly. Van Leeuwen, it was a 29-hour delay. Aldez was like several days. Once they have reasonable suspicion, and certainly once they find out what's in the package, then it doesn't make any difference when they deliver it. I mean, I think the facts in this case show that the government did everything right. As soon as he got in, they had the alert. He took it out. He got the search warrant within two and a half hours, which I think is pretty good. And there really was no delay in obtaining that particular cleaning. So unless the court has any further questions. Thank you very much. The case of United States v. Bonk will be submitted.
judges: Trott, Wardlaw W. Fletcher